## McCABE POWERS BODY COMPANY, Movant,

v.

## Paul SHARP and Wanda Sharp, Respondents.

Supreme Court of Kentucky.

Feb. 12, 1980.

Rodney S. Bryson, Ware, Bryson, Nolan, West & Hiltz, Covington, for movant.

G. Wayne Bridges, Covington, for respondents.

STEPHENSON, Justice.

Respondents, Paul Sharp (now deceased) and Wanda Sharp, his wife, filed suit for personal injuries against movant, McCabe Powers Body Company. On the trial of the case, at the conclusion of respondents' evidence, the trial court directed a verdict in favor of McCabe Powers Body Company. The Court of Appeals reversed the judgment of the trial court and ordered a new trial. We granted discretionary review and reverse the opinion of the Court of Appeals.

The respondent, Sharp, was employed as an electrician by the Department of Highways. At the time of the accident, Sharp was surveying an outage of lights on an interstate interchange. He was aloft in the bucket of an aerial boom or "cherry picker" and close to a high voltage wire when a voltameter carried by Sharp exploded causing him to lose consciousness. His partner attempted to quickly lower the "cherry picker," but Sharp fell through a side opening of the bucket 15 to 17 feet to the ground and received severe permanent injuries. There was no evidence that Sharp received an electrical shock.

Sharp later filed suit against McCabe, the manufacturer of the aerial boom on which Sharp was working at the time of the accident. Neither Sharp, who did not remember, nor his partner, who was not looking, could say exactly what happened at the time of the explosion.

McCabe had constructed this aerial boom in exact accordance with the specifications of the Kentucky Division of Purchases contained in the invitation to bid. The specifications were detailed and complete with a warning to the bidders that a departure from the specifications would result in no payment and refusal of delivery. The specifications specifically required that the bucket on the boom have one open side. It was through this open side that Sharp fell when he slumped unconscious in the bucket. Sharp and his partner had used the aerial boom and bucket for more than three years prior to the date of the accident.

We do not consider Sharp's argument concerning failure to have the bucket insulated to 20,000 volts for the reason that we are not advised of any evidence that there was an electrical shock.

Sharp asserts (1) strict liability for selling a defective aerial bucket which was unreasonably dangerous; (2) negligence in manufacturing an uninsulated aerial bucket with an opening on one side and failing to provide a safety belt and failing to give warning as to its use or dangerous condition; and (3) breach of implied warranty of merchantability and implied warranty that the product was fit for its intended purpose.

The Court of Appeals pointed out that there was no contention that the aerial boom failed to operate in the intended manner and properly rejected Sharp's assertion of breach of implied warranty. However, the Court of Appeals concluded that a jury question was presented as to whether the aerial boom was unreasonably dangerous when sold by McCabe and in the determination of this fact, whether any warnings were given by McCabe of the danger of

working in the open-sided bucket of the aerial boom without a safety belt.

■ The Court of Appeals rejected McCabe's assertion that construction according to specifications absolved McCabe of liability. We are of the opinion that rejection of this assertion was error.

In *Dealers Transport Co. v. Battery Distributing Co.*, Ky., 402 S.W.2d 441 (1965), the court adopted the so-called doctrine of strict liability or products liability as enunciated in section 402A of the Restatement (Second), Torts. This doctrine imposes liability for manufacturing and selling any product in a defective condition unreasonably dangerous to the user or his property. The "defective condition" ordinarily encountered in this type lawsuit, as in *Dealers Transport,* is not apparent to the user or consumer.

Our first case of asserted deficient design of a product by a manufacturer was decided in *Jones v. Hutchinson Manufacturing, Inc.,* Ky., 502 S.W.2d 66 (1973). A grain auger was involved in the accident, and there we said, "We think it apparent that when the claim asserted is against a manufacturer for deficient design of its product the distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned. In either event the standard required is reasonable care." There it was held that the grain auger was not unreasonably dangerous, observing that a manufacturer was not an insurer that its product was incapable of producing injury.

Comment j to section 402A, supra, states that in order to prevent the product from being unreasonably dangerous the seller may be required to give directions or warnings as to its use. This is ordinarily not required when the danger or potential danger is generally known and recognized and is within common knowledge and understanding.

We are of the opinion that here the Court of Appeals erroneously applied the strict liability doctrine enunciated in the above

authorities. We have an entirely different situation in the instant case. The real question here is what is the liability of the seller to an employee of the buyer when the seller manufactures the product in accordance with specifications provided by the buyer, and the alleged defect in design is open and obvious?

We are of the opinion the answer is that the seller, McCabe, is not liable to Sharp in this set of circumstances.

This case is entirely different from the classic products liability case due to the added factor of design according to the buyer's specifications. We find authority for this position in *Rigsby v. Brighton Engineering Company,* Ky., 464 S.W.2d 279 (1971). There an automobile collided with a bridge pier on a four-lane toll road. There was no guardrail around the bridge pier. Brighton, designer of the highway, was sued alleging negligence in failing to recommend guardrails around the bridge pier. Brighton's defense was that the design was in accordance with the design standards and criteria of the Department of Highways which specified that no guardrails be located adjacent to or around that bridge pier, and that Brighton had no discretion to alter, change or deviate from the standard design. In this factual situation, we said that Brighton's failure to recommend guardrails was not negligence. While not a products liability case, the facts are analogous and the principle is applicable.

In *Spangler v. Kranco, Inc.,* 481 F.2d 373, 375 (4th Cir. 1973), in a lawsuit against the manufacturer involving an open and obvious hazard on an overhead crane, the court laid down a principle "that the products liability rule holding manufacturer liable does not apply where the product has been manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed."

Another expression in this area is found in *Garrison v. Rohm and Haas Company,* 492 F.2d 346, 351 (6th Cir. 1974); there Orangeville Manufacturing Company had

manufactured a dolly for moving boxes. In rejecting an assertion of liability against Orangeville, the court said: "To hold Orangeville liable for defective design would amount to holding a non-designer liable for design defect. Logic forbids any such result."

We conclude that ordinarily where a product is manufactured according to plans and specifications furnished by the buyer and the alleged defect is open and obvious, the manufacturer is protected from liability for injuries occasioned by use of the product.

In arriving at this conclusion we recognize that plans and specifications furnished by a buyer could contain design defects so extraordinarily dangerous that a product manufacturer should decline to produce or, if appropriate, issue warnings as to the use of the product. We do not see this circumstance in the bucket manufactured by McCabe.

We do not express an opinion as to a concealed defect in design produced according to plans and specifications furnished by a buyer.

The opinion of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

All concur except CLAYTON, J., who did not sit.